The trial in this case was marred by denial of fair trial in three ways. The first was that Mr. Vallejos did not get an instruction for possession as a lesser-included offense of receipt. This was then coupled with the sentencing to distribution when the jury instruction was only for receipt and the jury found only for receipt. And then the third, third wrong decision was that the jury found  And the third wrong decision was that when the prosecutor redacted and edited Mr. Vallejos' statement, the Court did not review it and denied the objection based on the rule of completeness without review. Let's start with that one. What was redacted, in your opinion, that should have been seen? All the – not every statement, but nearly every statement of the detective. The context of the entire interview, the – in particular, statements that would make Mr. Vallejos respond in the way that he responded. He started the interview with a discussion of Mr. Vallejos' girlfriend and her age and used the term cradle robber, and then went on from there. Now, one might think that these are not matters that we wanted to have in, but the point was to show the entire context of this line of questioning. And – And I assume – did you try the case? Yes, I did. Did you object? Yes. And did you offer the redacted portions in the defense case? Yes. No. No, I was told that they were – what the judge did was he ruled using a hearsay case, United States v. Fernandez, and which was a case of a robber who wanted to bring in his exculpatory statement. It was not in response to any kind of offer. The government wasn't bringing in a statement at all, and Mr. Fernandez wanted to bring in his exculpatory statement that he had given, and the judge said no. It was totally off point. Our point was that the rule of completeness requires to bring in context, and I was permitted to ask some questions of the detective regarding the statements. But without bringing in the entire statement, it was befuddling. Was it – is it your position that your client was goaded into confessing? No. No. Well, no. It was not – that was not our position. Improperly influenced into confessing? No. No, Your Honor. They – he confessed. Overly encouraged to confess? He confessed every time the officer talked to him. When the officer went to his house, Mr. Vallejos called up the officer and said, that's my stuff. When he was invited to the police station, he was not Mirandized. And one of the issues that I had wanted to bring in was the fact that I wanted to get – have the jury consider voluntariness. And that was – that was part of the issue as well. Now, I think goaded is too strong a term. Mr. Vallejos had previously been to prison. He was very active in recovery groups. He was – spontaneously spoke. But one of the – the reason that I wanted context in there, and I was not disputing exactly the statement, but I thought the context was important, because the – the detective used a lot of – I just thought it was important for the jury to see, even for the purpose of confrontation and dealing with the detective and showing who he was, in addition to who Mr. Vallejos was. And so I think the question is, if I may, the – in terms of the lesser included offense, all the cases and circuits that have reviewed the question have found that possession is a lesser included offense. Rule 36. Roberts, Jr. That doesn't mean you're entitled to that. It's an instruction in every case. I agree. But in this case, where the only evidence – if you compare it, say, with Davenport and Shales, and the most recent case, Danny Teague, the only evidence was the same evidence that had been downloaded. And – Counsel, how could he have been guilty of possession and not guilty of receipt in the circumstance there? Well, I think one of – one of the interesting parts of the possession statute is that possession includes knowing access, which is exactly what Mr. Vallejos did. He used the line wire, he brought up matters, he looked at the matters, and he deleted the matters. I think that falls as easily within – more so is possession than as receipt. And I would just note that there was an out-of-district case that I was reading, Beloit, I believe, and in that case there was discussion, which they denied, but there was discussion of the fact that receipt, because it has the 5-year mandatory minimum, is more like distribution. In other words, if you receive in order to distribute, as in a drug case, as in a gun case, if you receive for a purpose, that gives the 5-year mandatory minimum some sense. In this case, Mr. Vallejos, like all the people that do this, was between jobs looking at this stuff on his computer. It, in his case, ignited his addictive personality, and he recognized it. He was – that's part of the reason he was so quick to confess, was he was – So my understanding of this area of the law is that the charged offense, which the grand jury gets to determine, is that when there is a lesser included offense, you usually don't give that lesser included instruction unless there's some question about whether or not the jury could reasonably return a verdict on the charged count. And here, as Judge Gould suggested by his question, the evidence here was overwhelming with respect to the charged count of receipt. Well, so I don't see how the district court judge could possibly have abused his discretion in declining to give a lesser included offense of possession. In that case, let me move on to distribution, since I only have two minutes left. Given the state of the presentation, Mr. Vallejos was the jury-considered only receipt. We used an Eleventh Circuit instruction, which had a means to go both ways. The government chose not to include distribution. And then at the time of the sentencing – and this is why I say it's the – it's kind of the one-two punch. You can't go with the possession, but then you get to sentence using the distribution. And you're in a different arena once you move into sentencing and you look at the total conduct. Right. Total offense conduct. Right. But the total – And you apply the guidelines to that conduct. Correct. And you're stuck with what the jury's basic findings were with respect to the statutory maximum. And here there was a statutory minimum. Correct. And that – So the judge had to impose 5 years, but he could go up to, was it 20? Yes. And you look at all the facts and circumstances and apply the guidelines. Isn't there? Where – where did – where is the legal air in that? The elements for distribution were not provided. And the elements for distribution – It sounds like you're arguing Apprendi. I'm arguing Apprendi. I'm arguing Blakely. I'm arguing Booker. And what I'm saying is – That would have been a great argument prior to the guidelines becoming advisory. I agree. But I think that the fact is that the receipt, the way this case went down, that where receipt was chosen, distribution was not – was not provided in any way. To then bypass – Let me ask you this. Is it your argument that under the guideline, the guideline enhancement provision – I forget the numbers, I have it right here in front of me, but – that in – some sort of intent is required, or there's some sort of – For distribution, yes. Under the guidelines? Yes. Okay. And did the judge find – did the judge find this? He found that all the distribution guidelines applied. But he found that because why? Lime wire. What did he say? He said that because the lime wire was downloaded, and I would just say that it was downloaded by default, in any case – Nonetheless, it was downloaded, and what's the purpose of lime wire? Share, peer-to-peer sharing. That's what the judge said. That's correct. And – You're over your time limit. Oh, it says 1.16, sorry. Good morning. David Gappa for the United States. The district court did not abuse its discretion when it refused to allow the defendant to introduce inadmissible, irrelevant hearsay statements. Why did you just play the whole thing? Because there was no need to have the jury consider. How long was the whole tape? Approximately, probably 60 minutes. So there was a portion that was not relevant to anything. We didn't want to waste the jury's time, just as we're not going to introduce additional evidence that aren't necessary to obtain the conviction. So in our view, it was not necessary. Also, there were portions that dealt with his criminal history. I think in most instances, the defendant does not want their criminal history to be used. Then he could have stood up and said, no, no, no, I object, I object. No, I don't think it would be admissible for the government to try to do that, and I think it would have been improper, and we could have been accused then of trying to do that. Even if he had stipulated to playing the whole thing? If he had stipulated to playing the whole thing, we still didn't believe that there were portions that were relevant. So we do have to go by the rules of evidence, and the judge carefully considered the Crawford statements, and it's, in the government's view, significant to note that, as Judge Hawkins asked, which portions that you wanted in were not admitted, and to this day, even in this record, given the chance on appeal, the defendant has still not identified the specific statements that he contends were admissible and were important. So the district court bent over backwards in our view. The defendant had the discovery, they had the trial exhibit, they had the opportunity to prepare what the law requires, which is a very specific identification of those statements and a justification for why they would be admissible. The defendant failed to do that. The Court analyzed, even given a summary of what was being Crawford, whether or not those statements would be admissible and decided that it would not be appropriate to have those admitted, gave the defendant an opportunity to attack the voluntariness. The defendant, in our view, did not do much on the record on that respect, so there was no abuse of the trial court's discretion to keep those statements out. On the issue of the lesser included, the government agrees that there is no rational basis for this jury to have found possession and not received. The evidence was overwhelming that the defendant knowingly received the images of child pornography. There was no dispute about that. He called the detective after the search warrant was executed. He told the detective he was the one responsible. All of the contraband files were found in a password-protected user account entitled Eric, which was the defendant's first name. He came in voluntarily, provided his statement to the detective, which was video recorded. There was no indication it was not voluntary. He admitted that he used LimeWire. It wasn't an accidental downloading of that program. He specifically went out and searched for that program and downloaded it. In the trial, the government took the jury through and the court through the specific steps that a user of LimeWire has to go through to obtain those images of child pornography. You put in search terms. You get a list of file candidates. You go through that list. You select the ones that you want, and you begin the download process. And the files were saved onto the computer. The defendant admitted this. He never disputed it. There was evidence that he viewed those files. So the evidence was overwhelming that he received those images and related to the sentencing issue that they were available for sharing because we know that Detective Hively transferred several of those files, and that's how law enforcement identified this particular defendant. It was no abusive discretion for the court to apply the relevant guideline provision, which would also have applied if this were a possession conviction. It were a receipt conviction. So 2G2.2 applies. Notably, the defendant doesn't challenge the application of any of the other specific offense characteristics, such as there were images of a prepubescent minor, use of the computer, the number of images. All of those are specific offense characteristics, which the court noted are relevant factors at sentencing. So there was no abusive discretion by the court applying the relevant guideline and determining what the guideline range was. And to the defendant's benefit, the court gave a significant 47-month downward variance. So in the government's view, this was not an abusive discretion either to admit the defendant's misdemeanor or to refuse to give the lesser-included instruction or to sentence as it did. Let me ask you this on these file-sharing programs. Is it the government's position that whenever a defendant's, you know, whenever you locate one of these file-sharing programs on a defendant's computer, does that automatically mean they're guilty or responsible for distribution? Well, I think that always we're going to have to look at the facts. So in this case, the facts were that he intentionally downloaded the program and intentionally used it. And among other things, there were other things. I mean, can you envision a situation where somebody wouldn't intentionally  Whether you're going to do that. Somebody might not know that it's on their computer? Somebody – there could – totally separate from this case. You could imagine a scenario where a computer has a file-sharing program and that a person uses that computer not knowing the file-sharing program is there. I think it's very difficult for somebody who knows the file-sharing program is there to say that they didn't intentionally receive contraband if they obtained contraband through use of that file-sharing program. Because it's – the way it is, especially if you're the one who installs it, you're given those notices, welcome to the world's best file-sharing program. Files that are in your shared folder are available to everybody in the world. You're on notice that it is a file-sharing program. So if you're the one who's installed the program and used it, it would be very difficult to say that you didn't know that you were making those files available and that you've actually shared them. Okay. Okay. Thank you. Thank you, counsel. We appreciate your arguments in this case. It's submitted.
judges: Hawkins, Gould, Paez